## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Agro Sevilla Aceitunas S. Coop. And.;<br>Ángel Camacho Alimentación, S.L.,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>United States,<br><br>　　　　　　Defendant | Court No. 25-00153 |

## COMPLAINT

Plaintiff Agro Sevilla Aceitunas S. Coop. And. ("Agro Sevilla"), by and through counsel, hereby alleges and states the following:

### JURISDICTIONAL STATEMENT

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because the action is commenced under Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a. This action contests the final results issued by the U.S. Department of Commerce ("Commerce" or the "Department") in the fifth administrative review of the antidumping duty order on Ripe Olives from Spain (A-469-817). *See Ripe Olives From Spain: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 90 Fed. Reg. 25,223 (June 16, 2025) ("Final Results").

2. Commerce's analysis of the issues and data are contained in an Issues and Decision Memorandum, Issues and Decision Memorandum for Final Results of the Administrative Review of the Antidumping Duty Order on Ripe Olives from Spain; 2022-2023 (June 9, 2025) ("Final IDM"), and Final Results Calculations for Agro Sevilla Aceitunas S.COOP Andalusia; Antidumping Duty Administrative Review of Ripe Olives from Spain; 2022-2023 (June 9, 2025) ("Agro Sevilla Final Calc. Memo.").

## STANDING OF PLAINTIFFS

3. Agro Sevilla is a foreign producer and exporter of subject merchandise who was a responding party in the administrative review now being challenged. Agro Sevilla is therefore an interested party within the meaning of 19 U.S.C. §1677(9)(A) and 1516a(f)(3).

4. Agro Sevilla has standing to bring this action under section 516A(d) of the Tariff Act of 1930, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(e).

## TIMELINESS OF THIS ACTION

5. Commerce published notice of the contested determination on June 16, 2025. *See* 90 Fed. Reg. 25,223. This action commenced with the filing of the Summons on July 16, 2025 (ECF No. 1), within 30 days after the publication of the Final Results. This complaint is being filed within 30 days of the filing of the summons in accordance with Rule 3(a)(2) of the Court of International Trade. Accordingly, this action is timely filed under 19 U.S.C. 1516a(a)(2)(A).

## STATEMENT OF FACTS

6. The original antidumping duty ("AD") order on Ripe Olives from Spain was imposed in August 2018. *See Ripe Olives From Spain: Antidumping Duty Order,* 83 Fed. Reg 37,465 (Aug. 1, 2018).

7. On October 18, 2023, Commerce published notice of initiation of the fifth administrative review of the AD order on Ripe Olives from Spain. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 88 Fed. Reg. 71,829 (Oct. 18, 2023). Agro Sevilla was an interested party as one of the two mandatory respondents in the administrative review. *See Ripe Olives From Spain: Preliminary Results of Antidumping Duty Administrative Review, and Partial Rescission of Review; 2022–2023*, 89 Fed. Reg. 74,207 (Sept. 12, 2024).

8. On June 16, 2025, Commerce published its Final Results in the fifth administrative review of the AD order on Ripe Olives from Spain. 90 Fed. Reg. 25,223.

9. In the Final Results, Commerce employed a "differential pricing analysis" and found that 93.35 percent of the value of Agro Sevilla's U.S. sales passed Commerce's adaptation of the "Cohen's *d*" test, which Commerce determined confirmed the existence of a pattern of prices that differ significantly among purchasers, regions, or time periods within the meaning of 19 U.S.C. § 1677f-1(d)(1)(B)(1). *See* Agro Sevilla Final Calc. Memo. at 3-4.

10. Commerce further determined that the default average-to-average comparison method for calculating the weighted-average dumping margin in original investigations and administrative reviews, *see* 19 C.F.R. § 351.414(c)(1), could not

3

account for such differences because the weighted-average dumping margin crosses the *de minimis* threshold when calculated using the average-to-average method and when calculated using an alternative comparison method based on applying the average-to-transaction method to all U.S. sales. *Id*.

11. Based on the results of its differential pricing analysis and related determinations, Commerce resorted to 19 U.S.C. § 1677f-1(d)(1)(B)(2) and applied the average-to-transaction comparison method to all of Agro Sevilla's U.S. sales to calculate a weighted-average dumping margin of 2.64 percent. *See* Agro Sevilla Final Calc. Memo. at 3-4. The default average-to-average method would have produced a weighted-average dumping margin of 0.00%. *Id*.

12. In rendering these final results for Agro Sevilla, Commerce acknowledged arguments made by Agro Sevilla that Commerce had applied the Cohen's *d* test to sales data that did not satisfy the statistical assumptions of normal distribution, equal variances, and sufficiently numerous data. Commerce further acknowledged that the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") in cases such as *Marmen Inc. v. United States*, 134 F.4th 1334 (Fed. Cir. 2025) held that it is unreasonable to apply the Cohen's *d* test to data under such conditions. Final IDM at 9-10 and n.31. Commerce declined to apply the Federal Circuit holding to its determination on the basis that the Federal Circuit had not yet issued a mandate and the period to seek an appeal had not expired. *Id*.

## STATEMENT OF CLAIMS

13. In the following respects, and for other reasons apparent from the administrative record of Commerce's antidumping administrative review, the Final Results are not supported by substantial evidence on the record and are otherwise not in accordance with law.

**Count 1: The results of Commerce's differential pricing analysis are not supported by substantial evidence and otherwise contrary to law because Commerce utilized a simple average instead of a weighted average to calculate the denominator of the *d* coefficient in its Cohen's *d* test and did not provide any reasonable explanation for why this may still provide meaningful results.**

14. Agro Sevilla hereby re-alleges and incorporates by reference paragraphs 1 through 13.

15. Commerce's adaptation of the Cohen's *d* test to find a pattern of Agro Sevilla prices that differ significantly among purchasers, regions, or time periods within the meaning of 19 U.S.C. § 1677f-1(d)(1)(B)(1) relies upon a simple average instead of a weighted average to calculate the denominator of the *d* coefficient, contrary to the approach supported the statistical literature.  In doing so, Commerce failed to provide any reasonable explanation of why this departure from well-established statistical norms and guidance could still provide meaningful results to confirm the existence of a pattern of prices that differ significantly among purchasers, regions, or time periods.

16. Commerce's failure to provide a reasonable explanation to justify the use of a simple average to calculate the denominator of the *d* coefficient renders its differential

pricing analysis and resort to an average-to-transaction comparison methodology to calculate Agro Sevilla's weighted-average dumping margin unsupported by substantial evidence and otherwise contrary to law.

**Count 2:  The results of Commerce's differential pricing analysis are not supported by substantial evidence and otherwise contrary to law because Commerce applied the Cohen's *d* test to groups of sales data that did not meet the assumptions of normality, equal variances, and sufficient size on which the test is based and did not provide any reasonable explanation for why this may still provide meaningful results.**

17. Agro Sevilla hereby re-alleges and incorporates by reference paragraphs 1 through 16.

18. Commerce's adaptation of the Cohen's *d* test to find a pattern of Agro Sevilla prices that differ significantly among purchasers, regions, or time periods within the meaning of 19 U.S.C. § 1677f-1(d)(1)(B)(1) was applied to comparison groups that were either not normally distributed, unequal in size, or unequal variances, or a combination of two or more defects.  As such, Commerce's application did not meet the assumptions of normality, equal variances, and sufficient size on which the test is based.  In doing so, Commerce failed to provide any reasonable explanation why this departure from well-established statistical norms and guidance could still provide meaningful results to confirm the existence of a pattern of prices that differ significantly among purchasers, regions, or time periods.

19. Commerce's failure to provide a reasonable explanation to justify its failure to meet the assumptions of normality, equal variances, and sufficient size on which the Cohn's *d* test is based renders its differential pricing analysis and resort to an

6

average-to-transaction comparison methodology to calculate Agro Sevilla's weighted-average dumping margin unsupported by substantial evidence and otherwise contrary to law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Agro Sevilla prays that this Court enter judgment as follows:

(A)  Enter judgment in favor of Agro Sevilla;

(B)  Hold as unlawful Commerce's final results of the fifth administrative review of the AD order on Ripe Olives from Spain that are the subject of this Complaint,

(C)  Remand this proceeding to Commerce with instructions to publish revised final results and recalculate Agro Sevilla's AD rate in conformity with the Court's decision; and

(D)  Grant Agro Sevilla such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Matthew P. McCullough

Matthew P. McCullough

**Pillsbury Winthrop Shaw Pittman LLP**

1200 Seventeenth Street, NW
Washington, DC 20036
202-663-8141

*Counsel for Agro Sevilla Aceitunas S. Coop. And.*

Dated: August 15, 2025